LOPEZ, AQUILINO, Jr., Associate Judge.
The appellant was the defendant, and the appellee was the plaintiff below.
Edith Altman, the plaintiff, filed her complaint alleging that the defendant, the City of Miami, negligently allowed a sidewalk within the city limits to fall into a state of disrepair and that the sidewalk was not reasonably safe for pedestrian travel. Plaintiff alleged that the defendant’s negligent maintenance of said sidewalk caused her to fall and sustain injuries. The defendant filed its answer denying plaintiff’s allegations in negligence and affirmatively pleaded that the plaintiff’s injuries were caused by her own contributory negligence.
The case was tried before a jury and a verdict of $8,000 was returned for the plaintiff.
Among the appellant’s assignments of error was the alleged failure of the court to grant defendant’s motion for a directed verdict because the plaintiff failed to prove that the sidewalk was not reasonably safe for pedestrian travel and because the evidence affirmatively showed that the proxi *417 mate cause of the injuries to the plaintiff was her own contributory negligence.
The plaintiff testified that she traversed the sidewalk approximately ten times a week for nine months and that she never saw the condition of the sidewalk until after she fell. Turning to Pages 139 to 141 of the transcript, we find that the plaintiff among other things has testified:
“Q. (Mr. Maloy) Just describe the condition of the surface of the sidewalk. A. It was cracked.
“Q. Were there any portions of the sidewalk missing? A. Not to my knowledge.
“Q. Do you recall the accident? A. Yes.
“Q. You say you do. Do you recall the place where you fell? A. Yes.
“Q. Would you describe how that surface of that area where you fell appeared to you? A. It appeared like it did any other morning. I mean there wasn’t anything—
“Q. How was that? A. It looked a little cracked, and that’s all. It didn’t look any different than any other morning.
Q. Would you describe to the jury just what happened immediately prior to the accident? A. The stone loosened. See, I was going to the —going across to the P & O. It was the sidewalk coming this way (indicating) and we go to an angle to the P & O. The stone loosened and I fell forward. The curb was jagged and I noticed that jag after I fell. That’s something that I think should be known, because I laid there for about five minutes. I could move my legs but I couldn’t move my hands. I couldn’t get up, in other words, and afterwards I learned that I had broken my shoulder and my hand. But that was — I couldn’t move. That was all.”
And on Page 167 of the transcript on cross examination, she testified as follows:
“Q.- Now, were you watching where you were walking on that morning that you fell? A. I walked in my usual manner. The cement or the stone of the pavement loosened and over I went— ”
We have considered all the assignments of error and reviewed the record and find that there was enough evidence for the cause to have gone to the jury and to support the jury’s verdict and have reached the conclusion that the Judgment of the lower court should be affirmed. See City of Miami v. Lawson, Fla.App. 1958, 104 So.2d 600; Andrews v. Goetz, Fla.App.1958, 104 So.2d 653; Schutzer v. City of Miami, Fla.App.1958, 105 So.2d 492; City of Miami v. Wolff, Fla.App. 1959, 112 So.2d 270.
Affirmed.
HORTON, C. J., and CARROLL, CHAS., J., concur.